IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT J. ZEBROWSKI, et al.    :    CIVIL ACTION
                               :
        v.                     :
                               :
EVONIK DEGUSSA CORPORATION     :    No. 10-542
ADMINISTRATIVE COMMITTEE, et al. :

**MEMORANDUM**

Ludwig, J.                                                    February 23, 2011

Defendants move to dismiss the complaint, Fed. R. Civ. P. 12(b)(6). The motion will be denied because the complaint appears to state claims for relief that are "plausible on [their] face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (U.S. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)).

This is an ERISA action, 29 U.S.C. §§ 1001-1461. Jurisdiction is federal question. 28 U.S.C. § 1331; ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

Plaintiffs are Robert J. Zebrowski, Robert A. Woodruff, and Gregory Bialy, former executives of RohMax USA, Inc.[1] According to the complaint, defendant Evonik Degussa Corporation Administrative Committee wrongfully denied payment of their vested retirement benefits and violated its duties as administrator and fiduciary of the other two defendants Evonik Degussa Corporation Retirement Plan (pension plan) and Evonik Rohmax USA, Inc.

---

[1] Plaintiffs began their employment with Rohm and Haas Company and were participants in its pension plans. In 1996, they became employees of RohMax USA, Inc., which eventually assumed liability for plaintiffs' pension benefits. Despite subsequent changes in corporate ownership, "the benefits remained the same and continued to mirror the legacy Rohm and Haas plans." Compl. ¶ 17.

1

Non-Qualified Pension Plan (top hat plan). Claims are made for monetary, equitable, and declaratory relief under the ERISA statute.

As to the claims of plaintiffs Woodruff and Bialy, the dismissal motion is based in part on non-exhaustion of administrative remedies. As to all plaintiffs, the motion asserts a failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion, the complaint's factual allegations are to be accepted as true and reasonable inferences are to be drawn in the pleader's favor. Umland v. PLANCO Fin. Servs., 542 F.3d 59, 64 (3d Cir. 2008).

Defendant Committee is the administrator and named fiduciary of both the pension plan and the top hat plan and acts as statutory fiduciary of the pension plan. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Both plans are defined benefit and also "pension benefit plans" within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2); however, the top hat plan, as its title suggests, provides post-retirement income for only a limited number of senior executives such as plaintiffs.[2] The pension plan qualifies for favorable tax treatment under

---

[2] A top hat plan "is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees." Goldstein v. Johnson & Johnson, 251 F.3d 433, 435 (3d Cir. 2001) (internal quotation marks and citations omitted); see also ERISA §§ 201(2), 301(a)(3), 401(a)(1), 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). Top hat plans "are not subject to the funding, participation, vesting or fiduciary standards applicable to other employee benefit plans." Miller v. Eichleay Eng'rs, Inc., 886 F.2d 30, 34 n.8 (3d Cir. 1989) (internal quotation marks and citations omitted). The plans are covered by ERISA's administrative and enforcement provisions. In re IT Group, Inc., 448 F.3d 661, 664-65 (3d Cir. 2006). These "plans are more appropriately considered as unilateral contracts, whereby neither party's interpretation is entitled to any more 'deference' than the other party's." Goldstein, 251 F.3d at 436, citing In re New Valley Corp., 89 F.3d 143, 148-49 (3d Cir. 1996) (top hat plans are governed by federal common law of contract); Kemmerer v. ICI Americas Inc., 70 F.3d 281, 287 (3d Cir. 1995) ("[T]he plan constitutes an offer that the employee, by participating in the plan, electing a distributive scheme, and serving the employer for the requisite number of years, accepts by performance.").

the Internal Revenue Code, 26 U.S.C. § 401; the top hat plan does not.[3]  Compl. ¶¶ 9, 10, 18.

Both plans produce a monthly benefit amount, which a participant may elect to receive in the form of a monthly annuity or a lump sum representing the monthly annuity's present value. Compl. ¶¶ 43, 56. The plans require payments to be actuarial equivalents. Id. ¶¶ 20, 43. The pension and top hat plans treat cost-of-living adjustments (COLAs) differently. For monthly benefits paid by an annuity, the pension plan originally added to the monthly benefit a COLA that was calculated and distributed annually. For lump sum benefits, the pension plan did not contain an actuarial equivalent for annual COLAs. In 2008, however, the pension plan was amended to include COLA benefits for both forms of payment.[4] Id. ¶¶ 21-23. Top hat participants may elect to receive a monthly annuity with the added benefit of an annual COLA or a lump sum without COLAs.

When plaintiff Zebrowski retired at age 60 on November 30, 2006, he elected lump sum payment of his retirement benefits under each plan. At that time, the pension plan included COLAs only if a participant elected a monthly annuity. Therefore, Zebrowski's pension plan lump sum did not include COLA benefits that would have accrued if he had elected a monthly annuity. Compl. ¶¶ 25, 26, 30. On December 30, 2008, about two years after he retired, the pension plan was amended to retroactively allow COLAs for lump sum

---

[3] Top hat plans allow an employee to defer receipt of a portion of compensation until retirement, when the employee may be in a lower tax bracket, reducing the amount of taxes to be paid until actual receipt of the deferred amount. In re IT Group, Inc., 448 F.3d at 664-65.

[4] The complaint alleges that the pension plan was amended in light of *Williams v. Rohm and Haas Pension Plan*, 497 F.3d 710, 712 (7th Cir. 2007) (plan violated ERISA by denying COLAs for lump sum payments because COLAs were an accrued benefit). Compl. ¶¶ 22-23.

3

payments of benefits earned before December 31, 2008. Id. ¶¶ 22-23, 39, 52; Schedule "F to the 2008 restated pension plan, doc. no. 4-3 at 42. During the year following the amendment, plaintiffs Woodruff and Bialy also retired. They elected lump sum payment of their retirement benefits under each plan. When plaintiff Woodruff retired at age 62 on March 31, 2009 and plaintiff Bialy retired at age 62 on November 30, 2009, the pension plan allowed COLAs for lump sum payments. Id. ¶¶ 42, 48.

Using the formula set forth in the complaint, plaintiffs' top hat benefits amounted to "one-twelfth of (A minus B) x C," as specified in Section 7.2.2 of the plan document effective July 1, 1999. Compl. ¶¶ 14, 16, 19, 56. This translates as follows: "A" is the amount of all regular and bonus compensation paid in excess of Internal Revenue Code limits for qualified plans; "B" is the monthly amount of benefits payable under the tax-qualified pension plan; and "C" is "a factor measuring the number of years among the preceding ten years during which the participant occupied a certain career band, with a minimum of five years (60 months) required to receive 100% of the calculated benefits." Id. On December 30, 2008, the top hat formula was amended by adding the following at the end of factor "B":

> . . . provided that the Participant's Basic Amount of Early Retirement Pension shall reflect the relative value of the Participant's selected payment form under the Pension Plan.[5]

Compl. ¶¶ 30, 53; 2008 restated top hat plan, Section 6.1(b)(ii), doc. no. 4-4 at 17.

---

[5] Defendants rely on this amendment to support their position. Footnote 6, *infra*.

Under the compensation structure outlined in the complaint, in both the 1999 and the restated 2008 top hat plans, "B" is the amount of benefits payable under the pension plan expressed in a monthly amount before the addition of COLAs. Compl. ¶¶ 19, 43-44, 56; Pls. br. at 11, doc. no. 10 ("the starting value of these monthly benefits would not reflect any COLA"). The complaint alleges that the Committee misinterpreted the 1999 top hat formula, improperly amended the 1999 plan document on December 30, 2008, and wrongly interpreted "B" to be an off-set of pension plan lump sum payments that included COLAs. Also, the Committee's "total retirement benefit" combined both plan amounts, which lowered the benefit amounts payable to plaintiffs. Compl. ¶¶ 26, 30, 37, 41, 48, 53. In other words, defendants incorrectly decided that the addition of COLAs to pension plan lump sums would reduce the corresponding top hat lump sums by the same amount. Id. This is the essence of the parties' dispute.[6]

The complaint contends that in violation of ERISA's anti-cutback rule,[7] the restated 2008 top hat formula constructively amended the pension plan: "The amendment

---

[6] Defendants: "Put another way, a participant's total retirement benefit equals the sum of their Qualified Plan [pension plan] benefit plus their Non-Qualified Plan [top hat plan] benefit after the offset." Defs. br. at 2, doc. no. 4-1. Also: "if a participant's Qualified Plan benefit increases for any reason, then the amounts of the Non-Qualified Plan benefit will correspondingly be reduced or offset, and the total retirement benefit paid to the participant remains the same." Defs. br. at 6, doc. no. 4-1.

[7] ERISA's "anti-cutback rule": a one-time lump sum distribution of pension plan benefits "shall be the actuarial equivalent" of the accrued benefit in the form of a single-life annuity, ERISA § 204(c)(3), 29 U.S.C. § 1053(c)(3), and the "accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . ." ERISA § 204(g), 29 U.S.C. § 1054(g). The right to receive accrued pension plan COLA benefits in a lump sum payment may not be affected by an employer's subsequent amendment of a plan.

conditioned receipt of the lump sum Pension Plan benefit on non-receipt of a significant portion of [top hat plan] benefits and thus reduced the value of accrued and protected Pension Plan benefits." Compl. ¶¶ 53, 57.

The complaint continues. Plaintiff Zebrowski requested additional pension plan benefits to remedy the shortfall of COLAs in his lump sum payment. Compl. ¶¶ 25, 28, 31. Instead, the Committee decided he was overpaid his top hat lump sum by an amount equal to the shortfall on his pension plan lump sum. The Committee's calculation required Zebrowski to repay the top hat plan $461,775 in order to receive the same amount in COLA benefits from the pension plan. Zebrowski had exhausted all internal claims and appeal procedures to contest this computation before filing this action on February 8, 2010. Id. ¶¶ 25-32.

As to Woodruff and Bialy, the complaint alleges that they requested lump sum pension plan payments that included COLAs. Compl. ¶¶ 37-43, 51. The Committee agreed, but then reduced their top hat lump sums by an amount equal to their pension plan COLAs – $429,957 for Woodruff and $266,470 for Bialy. Id. ¶¶ 42, 44, 48.

Defendants initially contended that Woodruff and Bialy did not exhaust all available administrative remedies before filing this action and their claims, therefore, were premature.[8] As of January 20, 2011, however, administrative proceedings for all plaintiffs were completed without a change in defendant Committee's position on benefits. Pls. supp. mem.,

---

[8] That plaintiff Zebrowski exhausted all available administrative remedies is undisputed. Defs. br. at 10, doc. no. 4-1.

doc. no. 13. Defendants' motion to dismiss the benefits claims of plaintiffs Woodruff and Bialy in Counts One, Two and Three of the complaint for administrative non-exhaustion will therefore be denied as moot.

Defendants' motion to dismiss also would also deny plaintiffs' right to sue for both legal and equitable relief in the same action. Defs. mot. ¶¶ 3, 5. However, at this early stage of the litigation, a complaint in an ERISA action may contain alternative claims under §§ 502(a)(1)(B) and 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3). Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); and Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); see 5 Wright & Miller, *Federal Practice and Procedure* § 1282 (3d ed.) (Westlaw 2010) (pleading in the alternative spares litigants from electing a particular set of facts and a legal theory at the pleading stage and being forced to set forth allegations with a degree of certainty that often is not warranted in terms of the state of the pleader's knowledge). Before discovery, plaintiffs should not be forced to choose between their claims for benefits and their claims for equitable relief.

Defendants' motion would also dismiss all Count Two claims for breach of fiduciary duty under ERISA § 404(a), 29 U.S.C. § 1104(a), which delineates fiduciary requirements applicable to the pension plan. Defs. mot. ¶¶ 3, 6. The motion posits that Count Two claims relate only to the top hat plan. Viewed most favorably to plaintiffs, however, some of the

7

Count Two fiduciary breaches pertain to pension plan benefits and the interpretation and administration of the terms of the pension plan in regard to the top hat plan. Count Two states a "plausible" ERISA § 404(a) claim for relief.

Other cases have concluded that the adequacy of a recovery or relief under §§ 502(a)(1)(B) and 502(a)(3) should not be determined in this type of litigation at the pleading stage. Plaintiffs are entitled to discovery and to make a complete record. See, e.g., DeVito v. Aetna, Inc., 536 F. Supp. 2d 523, 533-34 (D.N.J. 2008) (claims for equitable relief are not properly dismissed at the motion to dismiss stage merely because a plaintiff has also brought a claim for recovery of benefits); Parente v. Bell Atlantic-Pa., No. 99-5478, 2000 WL 419981, at *3 (E.D. Pa. Apr. 18, 2000) ("Only when the judicial process establishes extent of the relief provided to plaintiff by [§ 502(a)(1)(B)] may the Court proceed to the question of whether (and what kind of) equitable relief under [§ 502(a)(3)] is appropriate.").

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.