IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT J. ZEBROWSKI, et al. : CIVIL ACTION
:
v. :
: No. 10-542
EVONIK DEGUSSA CORPORATION :
ADMINISTRATIVE COMMITTEE, et al. :

**MEMORANDUM**

Ludwig, J. November 20, 2012

This is an ERISA action, 29 U.S.C. §§ 1001-1461. Jurisdiction is ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and federal question, 28 U.S.C. § 1331.

Plaintiffs move for prejudgment interest and "other appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), doc. nos. 53, 54, 59, 60, following the determination of defendants' liability for pension benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). According to defendants, the measure of prejudgment interest sought is excessive, doc. no. 57.

On September 11, 2012, summary judgment on Counts One, Two, and Three of the complaint was entered against defendants and in favor of plaintiffs – Robert J. Zebrowski, Robert A. Woodruff, and Gregory Bialy, former executives of RohMax USA, Inc. Sept. 10, 2012 order and mem., doc. nos. 48, 49. It was ruled that defendant Administrative Committee wrongfully denied payment of plaintiffs' vested retirement benefits and violated its duties as administrator and fiduciary of the other two defendants Evonik Degussa Corporation Retirement Plan (pension plan) and Evonik Rohmax USA, Inc. Non-Qualified

1

Pension Plan (top hat plan). Id. Count Four of the complaint was dismissed as moot. Summary judgment was also entered in favor of plaintiff Zebrowski and against defendant Committee on its counterclaim that a portion of his top hat benefits was overpaid and should be returned by him.[1] Id.

Given those rulings, which are the law of this case, the parties agree that in March of 2009, plaintiff Zebrowski should have received an additional lump sum payment from the pension plan. Also agreed: on June 19, 2009 and on December 31, 2009, respectively, plaintiffs Woodruff and Bialy should have received additional payments from the top hat plan. See pls. br., doc. no. 54-2 at 11-12 & n.2; Zebrowski decl., doc. no. 54-3, Ex. A;

---

[1] The September 10, 2012 order and memorandum (doc. nos. 48, 49) ruled that defendant Committee misinterpreted the top hat plan benefits formula, improperly amended the July 1, 1999 top hat plan document on December 30, 2008, and wrongly construed the formula's factor "B" as an off-set of pension plan lump sum payments that included cost-of-living adjustments (COLAs). Also, the Committee misinterpreted the top hat and pension plans as a combined "total retirement benefit," which lowered the benefit amounts payable to plaintiffs. Moreover, the Committee did so by deciding that the addition of COLAs to pension plan lump sums reduced the corresponding top hat lump sums by the same amount. Using this method to calculate benefits constructively amended the pension plan in violation of ERISA's anti-cutback rule, § 204(c)(3), (g); 29 U.S.C. § 1054(c)(3), (g): "The amendment conditioned receipt of the lump sum Pension Plan benefit on non-receipt of a significant portion of [top hat plan] benefits and thus reduced the value of accrued and protected Pension Plan benefits." Compl. ¶¶ 53, 57.

Defendant Committee's misinterpretation of the top hat plan violated its fiduciary duties. It acted as a fiduciary for both plans. See Goldstein v. Johnson & Johnson, 251 F.3d 433, 442 (3d Cir. 2001) (ERISA defines "fiduciary" as one who exercises discretion in interpreting the terms of a plan (citing ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) ("a person is a fiduciary with respect to a plan to the extent . . . (i) he exercises any discretionary authority or discretionary control respecting management of such plan . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of the plan")). The Committee did not discharge its fiduciary duties as to both plans. See Goldstein, 251 F.3d at 436 (the implied duty of good faith and fair dealing – "a requirement that includes the duty to exercise the discretion reasonably"); ERISA § 404(a)(1)(A)(i), (B), (D), 29 U.S.C. § 1104(a)(1)(A)(i), (B), (D) ("a fiduciary shall discharge his duties . . . for the exclusive purpose of: providing benefits to participants and their beneficiaries; and . . . with the care, skill, prudence, and diligence . . . [of] a prudent man . . . in accordance with the documents and instruments governing the plan").

2

Woodruff decl., doc. no. 54-4, Ex. B; Bialy decl., doc. no. 54-5, Ex. C. "Defendants . . . do not dispute the time period over which prejudgment interest should be paid." Defs. br., doc. no. 57 at 4.

Plaintiffs propose two alternative measures of relief: first, "if the defendant realized investment returns or other financial benefits from the funds it retained, then the plaintiff is entitled to those gains, lest the defendant retain any unjust enrichment from its wrongdoing." Pls. br., doc. no. 54-2 at 6, 7 ("gains that defendants realized as a result of unlawfully retaining Plaintiffs' money"). In plaintiffs' view, this amounts to the rate earned by the pension plan in plaintiff Zebrowski's case, and the rate earned by the company in plaintiffs Woodruff's and Bialy's cases, from the time the benefits should have been paid in 2009 to September 30, 2012.[2] The second proposed measure is compensatory: "the investment earnings or other returns that each plaintiff would have realized on the delayed benefits." Id. at 6, 7 ("lost investment returns . . . that plaintiffs actually realized on their other pension plan monies and also would have realized from the withheld funds if the benefits had been timely paid"). As asserted by each plaintiff, these amounts are projected investment returns from personal accounts in which the additional benefits would have been invested if they had been paid in 2009. Using this metric, plaintiffs claim a tax "gross-up" (not a felicitous but a clear

---

[2] In plaintiff Zebrowski's case, an additional lump sum benefit is due from the pension plan. Those funds were retained in the pension plan and earned returns as part of the pension plan. In plaintiffs Woodruff's and Bialy's cases, additional lump sum benefits are due from the top hat plan, which was unfunded – its benefits were payable directly from the company's general assets and operating revenues.

enough phrase) on any remedial payments for unfavorable tax consequences that would not have been incurred if the payments had been made in 2009.

Defendants' response: the "only contested issue . . . is the appropriate interest rate to apply." Defs. br., doc. no. 57 at 1. They say that both rates proposed by plaintiffs would generate "a windfall analogous to punitive damages." Id. at 1-2, 5 ("profit disgorgement rate" would provide a return "greater than 150%" of the benefits that are due over "the few years" that payments were delayed); id. at 2 ("rate of investment return . . . is based purely on speculation as to which investment options each Plaintiff may have invested in"); id. at 10 (no cases in this Circuit support the use of investment returns).

Defendants propose two different prejudgment interest calculations – either the statutory rate under 28 U.S.C. § 1961,[3] or the interest rate specified in the pension and top hat plans for computing lump sum payments. Defs. br., doc. no. 57 at 1-3. The percentage for neither of these is given. Adverting to <u>Holmes v. Pension Plan of Bethlehem Steel Corp.</u>, 213 F.3d 124 (3d Cir. 2000), defendants observe that the statutory rate "was approved . . . for delayed payment of ERISA benefits." Id. at 3. In the alternative: the plans' lump sum interest rate "would be consistent with how the Internal Revenue Service would suggest a

---

[3] The statute provides an interest rate "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961. Plaintiffs: the § 1961 rate "during the last week of March 2009 was 0.59% and would yield plaintiff Zebrowski interest on his past due benefits . . . of . . . $10,654"; "during the last week of June 2009 was 0.48% and would yield plaintiff Woodruff interest of . . . $3,985"; and "during the last week of December 2009 was 0.41% and would yield plaintiff Bialy interest of . . . $1,785." Pls. reply br., doc. no. 60 at 9 n.1, 13 n.2.

4

plan make a participant 'whole' for delayed pension payments."[4] Id.

"A beneficiary has a general right of action 'to enforce his rights under the terms of the plan,'" without reference to whether the relief sought is legal or equitable. US Airways, Inc. v. McCutchen, 663 F.3d 671, 674 (3d Cir. 2011), cert. granted, No. 11-1285, 2012 WL 1439294 (U.S. June 25, 2012) (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 221 (2002)); ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Another ERISA civil enforcement section permits a plan beneficiary to obtain "appropriate equitable relief," in part to redress plan violations and a plan fiduciary's breach of duty – ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B). "Appropriate equitable relief" refers to "those categories of relief that traditionally speaking (*i.e.* prior to the merger of law and equity) were *typically* available in equity.'" US Airways, 663 F.3d at 675 (quoting CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1878 (2011)) (emphasis in original); Sereboff v. Mid Atl. Med. Serv., Inc., 547 U.S. 356, 362 (2006); Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993). As in Amara, the present motion for prejudgment interest "concerns a suit by a beneficiary against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan

---

[4] Defendants: "Schedule F to the Pension Plan sets forth the actuarial assumptions and factors to be applied for calculating lump sum payments under the Pension Plan for RohMax employees, like Plaintiffs. Under the Pension Plan's terms, the annual interest rates used to accumulate the COLA enhancement for each Plaintiff would be based on the Pension Plan's lump sum interest rate definition, contained in Schedule F, for each year through 2009 and then based on the interest rate set forth in Internal Revenue Code Section 417(e) in effect each year thereafter. Id." Defs. br., doc. no. 57 at 15; Revenue Procedure 2008-50, defs. Ex. 2, doc. no. 57-7.

"Although defendants do not describe this rate, it is a Treasury-based rate." Pls. reply br., doc. no. 60 at 11. The rate specified in the plans "is neither based on [plaintiffs'] losses or [defendants'] gains." Id.

(which ERISA typically treats as a trust). . . . It is the kind of lawsuit that, before the merger of law and equity, . . . could have been brought only in a court of equity, not a court of law." 131 S. Ct. at 1879.

Payment for the time-value of money in the form of "an award of [prejudgment] interest is an equitable remedy enforcing an ERISA plan provision, albeit an implied one, within the meaning of section 502(a)(3)(B)." Fotta v. Trustees of the UMWA Health & Retirement Fund of 1974, 165 F.3d 209, 214 (3d Cir. 1998). Our Court of Appeals "ma[d]e explicit that interest is presumptively appropriate when ERISA benefits have been delayed." Id.; see also id. at 215 (Alito, J., concurring) ("[s]uch an award is recognized as appropriate equitable relief in comparable circumstances under the law of trusts").

Plaintiffs' two alternative equitable remedies: prevention of unjust enrichment by disgorgement of pension plan and company profits; and surcharge against defendant Committee for lost investment returns. Amara explained that preventing unjust enrichment and surcharge fall within the traditional category of equitable relief:

> Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. . . . Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable."

131 S. Ct. at 1880 (citations to Restatement (Third) of Trusts and treatises on trust law omitted). See US Airways, 663 F.3d at 677 ("principle of unjust enrichment is broadly applicable to claims for equitable relief"); Skretvedt v. E.I. DuPont de Nemours, 372 F.3d

6

193, 206 (3d Cir. 2004) ("prejudgment interest is typically granted to make a plaintiff whole because the defendant may wrongly benefit from use of plaintiff's money") (quoting Schake v. Colt Indus. Operating Corp. Severance Plan for Salaried Emp., 960 F.2d 1187, 1190, 1192 n.4 (3d Cir. 1992)); Fotta, 165 F.3d at 213 (an award "not only ensures full compensation, but also serves to prevent unjust enrichment"). See also Restatement (Third) of Trusts § 100 (2012) ("trustee who commits a breach of trust is chargeable with . . . the amount of any benefit to the trustee personally as a result of the breach"); Restatement (Third) of Restitution and Unjust Enrichment §§ 1, 3, 41, 43, 51, 55 (2011) (disgorgement of the benefits of wrongful conduct).

In equity, "the surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." Amara, 131 S. Ct. at 1880. But "a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm – proved (under the default rule for civil cases) by a preponderance of the evidence." Id. at 1881-82; see also id. at 1885 (Scalia, J., concurring; Thomas, J., joining concurrence) ("amount for which an administrator may be surcharged is . . . the 'actual harm' suffered").

Our Court of Appeals instructs that ERISA's objectives are effectuated "by recognizing, under principles of equity, that beneficiaries should be fully compensated and that any unjust enrichment of plans at beneficiaries' expense should be avoided." Fotta, 165 F.3d at 214. However, the selection of the most appropriate measure for an award of

7

prejudgment interest involves an exercise of judicial discretion. US Airways, 663 F.3d at 676-77; Fotta, 165 F.3d at 214 ("awarding of prejudgment interest under ERISA is within the district court's discretion, 'given in response to considerations of fairness and denied when its exaction would be inequitable.'" (quoting Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1009 (3d Cir. 1992)) (alterations omitted).

Considering the posture of this case – decided on cross-motions for summary judgment as to the plain language of the plans – the objective of full compensation predominates. While review of the voluminous documentary record and deposition testimony did not reflect positively in defendants' favor, the record does not convincingly evince intentional bad faith or ill-motive on defendants' part. Much like punitive damages, disgorgement of profits is an extraordinary remedy designed to deter similar future conduct. Such a remedy is questionable here. The bad faith required for such a remedy has not been shown. Moreover, counsel for both sides acted in accordance with high professional standards and cooperated in narrowing the complex issues to bring this litigation to an efficient conclusion.

On the other hand, prejudgment interest at the minimal statutory rate is also ill-advised. Holmes did not – as indicated by defendants – approve the statutory rate for all delayed payment cases under ERISA. It simply held that "whether disgorgement is deemed punitive or otherwise," the district court did not abuse its discretion by declining to adopt it as a remedy and applying the statutory rate. Holmes, 213 F.3d at 132, 133 ("what matters

is . . . whether its balancing of the equities amounted to an abuse of discretion").

Here, defendants deprived plaintiffs of the opportunity to choose how they would have invested their money. Defendants suggest it is a matter of speculation how plaintiffs would have invested those funds. However, it was their conduct that prompted such a query. Each plaintiff has sufficiently established investment losses based on the actual performance of assets in his own retirement account. Defendants have not disputed the computation of the claimed lost investment returns, and they should shoulder the burden of this risk. See Nedd v. UMWA, 556 F.2d 190, 211 (3d Cir. 1977) ("as between innocent beneficiaries and a defaulting fiduciary, the latter should bear the risk of uncertainty as to the consequences of its breach"); see also pls. reply br., doc. no. 60 at 15 & n.3 (defendants "have not claimed that there are any calculation errors").

Here, the objective of full compensation must guide the calculation of prejudgment interest. Although our Court of Appeals has not ruled in an ERISA case that lost investment returns and tax "gross-ups" are compensable, these remedies are supported by long recognized principles for restoring a loss resulting from a trustee's breach of duty. In 2011, Amara so held. Moreover, in analogous circumstances, our Court of Appeals has recognized a tax gross-up was necessary to make the prevailing plaintiff whole:

> We hold that a district court may, pursuant to its broad equitable powers granted by the ADA, award a prevailing employee an additional sum of money to compensate for the increased tax burden a back pay award may create. Our conclusion is driven by the "make whole" remedial purpose of the . . . statute. Without this type of equitable relief in appropriate cases, it would not be possible to restore the employee to the economic status that would exist but for

9

the employer's conduct. . . . This type of award, as with prejudgment interest, represents a recognition that the harm to a prevailing employee's pecuniary interest may be broader in scope than a loss of back pay. Accordingly, either or both types of equitable relief may be necessary to achieve complete restoration of the prevailing employee's economic status quo and to assure the most complete relief possible.

Eshelman v. Agere Sys., Inc., 554 F.3d 426, 441-42 (3d Cir. 2009) (citations and internal quotation marks omitted); see also Marcus v. PQ Corp., 458 Fed. App'x 207, 214-15 (3d Cir. 2012) (tax relief allowed under ADEA as a form of compensation distinguished from punishment); but see Skretvedt, 372 F.3d at 204 n.15 (decided in 2004 before Amara and suggesting that claims for tax compensation are legal claims for money damages not permitted under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B)). In this ERISA case, the same "make-whole" remedial factors apply.

Adoption of the interest rate specified in the plans to compute lump sum payments is also dubious. The actuarial and cost-of-living issues pertinent to that rate appear to be completely distinct from ERISA's remedial objectives. The proposed measure does not correlate with ERISA's directive to compensate plaintiffs for actual losses.

Using the actual amount of benefits due each plaintiff, as stated in the order entered on September 11, 2012, and using the investment approach each plaintiff was following in 2009, plaintiffs claim the following prejudgment interest on the funds withheld by defendants from the expected time of payment to September 30, 2012:[5]

---

[5] On September 11, 2012, judgment was entered against defendants. The report of plaintiffs' expert, Kirsten L. Flanagan, CPA, computes losses as of September 30, 2012, given the availability of quarterly performance information. See pls. br., doc. no. 54-2 at 20 & n.6; Flanagan report, doc. no. 54-6. Plaintiffs' computation of returns as of September 30, 2012 will be accepted as sufficiently precise.

10

| Plaintiff | Principal Benefits Amount | Lost Investment Return |
|---|---|---|
| Zebrowski | $ 515,931.85[6] | $ 208,158 |
| Woodruff | $ 429,957 | $ 126,064 |
| Bialy | $ 266,470 | $ 33,349 |

Pls. br., doc. no. 54-2 at 20-21; pls. reply br., doc. no. 60 at 9 n.1, 13 n.2; see also report of plaintiffs' expert, Kirsten L. Flanagan, CPA, doc. no. 54-6 at 7-10, and up-dated Tables, doc. nos. 58, 59 (sealed). These amounts have been adjusted for taxes that would have been due at the time of payment of the top hat benefits to plaintiffs Woodruff and Bialy.

Compensation for the negative tax consequences caused by defendants' conduct is necessary to make the prevailing plaintiffs whole.[7] This should include any additional Social Security and unemployment withholding taxes that each plaintiff will incur from a remedial payment that would not have occurred if the benefits had been paid when due in 2009.

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.

---

[6] The order entered on September 11, 2012 (doc. no. 49) stated the amount of benefits due plaintiff Zebrowski as $461,775. However, on November 5, 2012, defendants provided information on additional interest that would have been paid by the pension plan to compensate Zebrowski for the delay between his retirement in December 2006 and February 1, 2009. Using the pension plan's interest rates for 2009, the benefit amount due Zebrowski as of February 1, 2009 was $512,468.54. For the period February 1, 2009 to March 31, 2009, plaintiff Zebrowski also claims entitlement to additional pension plan interest of $3,463.31. See pls. br., doc. no. 60 at 13 n.2.

[7] "A dollar paid to plaintiff Woodruff (and to plaintiff Zebrowski, if from a taxable source) will yield only 59½ cents after taxes, and a dollar paid to plaintiff Bialy will yield only 58¼ cents after taxes. Also, each will incur additional Social Security and unemployment withholding taxes which would not have been payable if the benefits had been timely paid." Pls. reply br., doc. no. 60 at 19; Flanagan report and Tables 6A-6B, doc. no. 54-6 at 11-12, 28-29. "Defendants do not dispute these tax impacts or the calculation of the overall tax rates to which each plaintiff will be subject. Defendants also do not dispute that to provide one dollar of relief they must pay plaintiff Woodruff (and plaintiff Zebrowski, if paid from a taxable source) $1.68 and plaintiff Bialy $1.72, plus amounts to defray their additional Social Security and unemployment withholding taxes." Id. at 19.