IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT J. ZEBROWSKI, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 10-542 |
| EVONIK DEGUSSA CORPORATION | : | |
| ADMINISTRATIVE COMMITTEE, et al. | : | |

**MEMORANDUM**

Ludwig, J.                                                                January 23, 2013

This is an ERISA action, 29 U.S.C. §§ 1001-1461.  Jurisdiction is ERISA § 502(e)(1), 29

U.S.C. § 1132(e)(1); and federal question, 28 U.S.C. § 1331.

Defendants move for reconsideration (doc. no. 74) of the January 15, 2013 order (doc. no.

71), which dismissed a proposed supersedeas bond and denied the application for a stay of

proceedings to enforce the judgment of December 4, 2012 pending appeal. Fed. R. Civ. P. 62(d).[1]

The bond was deemed unsatisfactory in form and amount.  See plaintiffs' answer (doc. no. 70) to

defendants' application for approval of bond (doc. no. 69).   Reconsideration will be denied.

Defendants will be granted until Tuesday, February 5, 2013 within which to submit a supersedeas

bond compliant with this memorandum.

On September 11, 2012, summary judgment on Counts One, Two, and Three of the

complaint was entered against defendants and in favor of plaintiffs – Robert J. Zebrowski, Robert

A. Woodruff, and Gregory Bialy, former executives of RohMax USA, Inc.  Order and mem., Sept.

10, 2012 (doc. nos. 48, 49).  Defendant Administrative Committee was found to have wrongfully

denied payment of plaintiffs' vested retirement benefits in violation of its duties as administrator and

---

[1]   Rule 62(2) in pertinent part:  "[i]f an appeal is taken, the appellant may obtain a stay by
supersedeas bond . . . . The bond may be given upon or after the notice of appeal or after obtaining the order
allowing the appeal.  The stay takes effect when the court approves the bond."  Fed. R. Civ. P. 62(2).

fiduciary of defendants Evonik Degussa Corporation Retirement Plan (pension plan) and Evonik Rohmax USA, Inc. Non-Qualified Pension Plan (top hat plan). Id. Count Four of the complaint was dismissed as moot. Summary judgment was also entered in favor of plaintiff Zebrowski and against defendant Committee on its counterclaim that a portion of his top hat benefits were overpaid and should be returned by him.[2] Id.

On December 4, 2012, it was also ruled that defendants are liable to plaintiffs for past due plan benefits and prejudgment interest. Amended order and judgment, ¶ 1(a), (b) (c) (doc. no. 66 at 1-2); see also Sept. 10, 2012 order and mem. (doc. nos. 48, 49). In addition, defendants were held liable for taxes resulting from payment of the award of benefits and prejudgment interest. Id. ¶ 1(d), (e) at 2-3. Further, plaintiffs were granted statutory attorney's fees of $249,205, together with costs and expenses of $46,609.08, subject to the terms of the parties' fee petition stipulation (doc. no. 63). Id. ¶ 1(f) at 2; 29 U.S.C. § 1132(g)(1).

---

[2]  The September 10, 2012 order and memorandum (doc. nos. 48, 49):  Defendant Committee misinterpreted the top hat plan benefits formula, improperly amended the July 1, 1999 top hat plan document on December 30, 2008, and wrongly construed the formula's factor "B" as a set-off of pension plan lump sum payments that included cost-of-living adjustments (COLAs).  The Committee curiously misread the top hat and pension plans as a combined "total retirement benefit," which lowered the benefit amounts payable to plaintiffs.  Moreover, the Committee did so by deciding that the addition of COLAs to pension plan lump sums reduced the corresponding top hat lump sums by the same amount.  Using this method to calculate benefits constructively amended the pension plan and thereby violated ERISA's anti-cutback rule, § 204(c)(3), (g); 29 U.S.C. § 1054(c)(3), (g):  "The amendment conditioned receipt of the lump sum Pension Plan benefit on non-receipt of a significant portion of [top hat plan] benefits and thus reduced the value of accrued and protected Pension Plan benefits."  Compl. ¶¶ 53, 57.

Defendant Committee's view of the top hat plan constituted a breach of its fiduciary duties inasmuch as it was acting as a fiduciary for both plans.  See Goldstein v. Johnson & Johnson, 251 F.3d 433, 442 (3d Cir. 2001) (ERISA defines "fiduciary" as one who exercises discretion in interpreting the terms of a plan (citing ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) ("a person is a fiduciary with respect to a plan to the extent . . . (i) he exercises any discretionary authority or discretionary control respecting management of such plan . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of the plan")).  The Committee did not discharge its fiduciary duties as to the plans.  See Goldstein, 251 F.3d at 436 (the implied duty of good faith and fair dealing – "a requirement that includes the duty to exercise the discretion reasonably"); ERISA § 404(a)(1)(A)(i), (B), (D), 29 U.S.C. § 1104(a)(1)(A)(i), (B), (D) ("a fiduciary shall discharge his duties . . . for the exclusive purpose of:  providing benefits to participants and their beneficiaries; and . . . with the care, skill, prudence, and diligence . . . [of] a prudent man . . . in accordance with the documents and instruments governing the plan . . . .").

On January 2, 2013, defendants filed a notice of appeal of the December 4, 2012 judgment to our Court of Appeals (doc. no. 67). On January 3, 2013, defendants moved under Fed. R. Civ. P. 62(d) for approval of a supersedeas bond and a stay of execution on the judgment (doc. no. 69). On January 8, 2013, plaintiffs answered the motion (doc. no. 70), and on January 17, 2013, defendants replied (doc. no. 73).

Recognized grounds for granting reconsideration are: "(1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Cottrell v. Good Wheels, 458 Fed. App'x 98, 101 (3d Cir. 2012) (citing N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). The scope of reconsideration is "extremely limited" and "[s]uch motions are not to be used as an opportunity to relitigate the case." Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011). Nor are they "a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not." Bostic v. AT&T of the V.I., 312 F. Supp. 2d 731, 733-34 (D.V.I. 2004).

Here, defendants' motion for reconsideration does not fit into any of the judicially recognized and approved categories or demonstrate that the court's rulings were unreasonable or create injustice.

A party on appeal of a money judgment may suspend the district court's enforcement jurisdiction by posting a supersedeas bond. See Fed. R. Civ. P. 62(d); Peacock v. Thomas, 516 U.S. 349, 359 & n.8 (1996). "The Rule plainly dictates that in the ordinary case execution on a judgment for money should not be stayed unless the party that prevailed in the district court is secured from loss." United States v. Kurtz, 528 F. Supp. 1113, 1114 (E.D. Pa. 1981) (Becker, J., later, C.J., 3d Cir. Court of Appeals, citing a predecessor of Rule 62(d) because "its standard is still vital"), aff'd,

688 F.2d 827 (3d Cir.), cert. denied, 459 U.S. 991 (1982).  The stay is not effective unless, on the

motion of the appellant, the court approves the bond.  Fed. R. Civ. P. 62(d); see also Fed. R. App.

P. 8(a).

Rule 62(d) does not articulate either the form or amount of the supersedeas bond.  However,

the former rule required that the amount "should normally be fixed to satisfy the judgment in full,

plus interest, costs, and damages for delay."  Kurtz, 528 F. Supp. at 1114 (citing prior Rule 62(d)).

Plaintiffs point to a number of substantial defects in the bond.  Defendants contend that the

objections either misapprehend "the nature of a supersedeas bond" or "would unduly complicate the

submission of the bond" as contemplated by Rule 62(d).  Defs. reply br. (doc. no. 73 at 2, 7).

Defendants are incorrect – the bond, as presented, does not provide the requisite security for the

order and judgment.

The proposed bond names "Evonik Degussa Corporation" – the sponsor[3] of the pension plan

and top hat plan – as the sole "Principal" obligor.  Bond, defs. mot. ¶ 5, Ex. A (doc. nos. 69, 69-2

at 2).  Its terms as stated may be fairly read to mean that "Principals" are the parties who are taking

the appeal.  However, the corporation, Evonik, was not found liable.  It was not a party in the district

court proceeding and is not a party in the appeal.  See Notice of Appeal (doc. no. 67).  Also, the bond

does not list the defendants – the Committee, the pension plan, or the top hat plan – who are parties

bound by the judgment and taking the appeal.  Id.  In addition, the bond does not name plaintiffs as

obligees.  Id.  Instead, it lists "United States District Court Eastern District of Pennsylvania" as the

sole secured entity, or obligee.  Bond, defs. mot., Ex. A (doc. no. 69-2 at 2).  The bond was issued

in the amount of $2,127,027.  Id.

---

[3]  "The term 'plan sponsor' means . . . the employer in the case of an employee benefit plan
established or maintained by a single employer . . . ."  Section 3(16)(B)(i) of ERISA, 29 U.S.C. §
1002(16)(B)(i).

Defendants say plaintiffs' "complaints are cosmetic only" and the court is the proper secured party because it "will hold the bond" pending the appeal.  Defs. br. (doc. no. 73 at 4).  In their view, plaintiffs are "beneficiaries" who would "receive the bond's value *if and only if*" plaintiffs should prevail on appeal and defendants could not satisfy the judgment.  Id. at 4-5 (emphasis in original); id. at 4 ("Put another way," plaintiffs are "only" beneficiaries, "not the Proposed Bond's custodian during the appeal").  Defendants offer no authority for this proposition.

The argument that the court should enter into a surety agreement for the benefit of the defendants is unsound.  A supersedeas bond is a surety agreement:

> The surety relationship exists where two obligors are bound to an obligee, who is entitled to only one performance, and, as between the two who are bound, one, rather than the other, should bear the burden of performing.  A surety is thus one who undertakes to pay money or to do any other act in the event that the principal obligor fails to perform.  Whether one is a surety, therefore, depends not upon that person's relation to the obligee (the creditor) but upon his or her relation to the principal obligor (the debtor).  Consequently, an agreement for sufficient consideration between the principal obligor and the surety, by which the surety assumes the debt, transposes the surety into a principal obligor and the principal obligor into a surety.

23 Williston on Contracts § 61:1 (4th ed. West May 2012).  Defendants misconceive the court's role, which does not include acting in the capacity of a surety or guarantor.  See id. § 61:2, Distinctions between sureties and guarantors; id. § 61:4, Capacity to act as surety or guarantor.  Its sole function is to decide whether defendants have met their burden of posting sufficient security to cover the judgment.  See also Restatement (Third) of Suretyship and Guaranty, Introductory Note & §§ 1, 2, 3 (1996, West Aug. 2012) (substance of a transaction . . . determines whether it is governed by the law of suretyship); 13 Moore's Federal Practice, §§ 65.1.01- 65.1.04 (3d ed. 2012) (discussing Fed. R. Civ. P. 65.1, Proceedings Against a Surety); 16 Summary of Pennsylvania Jurisprudence 2d, §§ 7:16-7:20 (West 2012) ("[s]upersedeas bonds are construed as any other contract").

Plaintiffs complain that defendants are not named as obligors.  Pls. br. (doc. no. 70 at 5-7).
Defendants say "[i]t will serve only to complicate the supersedeas bond process" to require that each
defendant be named as a "Principal," i.e., an obligor.  Defs. reply br. (doc. no. 73 at 4).  To do so
"could cause the Pension Plan to violate the law."  Id.  In the event defendants cannot satisfy the
judgment, "then it will not matter what entity is named as the obligor, as the Court will have the
discretion and authority to direct payment of the Proposed Bond's value to Plaintiffs."  Id. at 5.  This
also is an unsupportable contention.

The bond does not identify as an obligor any party liable for the judgment.  Instead, it names
the corporation, Evonik, as the "Principal" obligor and Western Surety Company as the "Surety."
According to defendants, the corporation, Evonik, should be the obligor because, as a practical
matter, it will pay any judgment.  Defs. reply br. (doc. no. 73 at 5-6).  They acknowledge that Evonik
– the sponsor of the pension and top hat plans – "is the ultimate funding entity for each plan."  Id.
at 5.  In the event neither plan can satisfy the applicable portion of the judgment, "Evonik will be
required to satisfy the judgment."  Id.  And "Evonik . . . will be liable for any judgment against the
Committee."  Id. at 5-6.  In addition, benefits owed from the top hat plan "are paid from Evonik's
corporate assets, and not from any trust."  Id. at 6.  Whether or not as a practical matter Evonik were
to become the ultimate payor of the entire judgment does not cure the bond's defects.  Evonik is not
liable for the judgment, and this defect alone renders the bond a nullity as security for the
supersedeas.  See In re F. B. F. Indus., Inc., 165 B.R. 544, 548 (Bankr. E.D. Pa. 1994) ("surety's .
. . liability to the obligee is coextensive with the primary liability of the principal"); Restatement
(Third) of Suretyship and Guaranty, §§ 1, 2, 3 ("duties of the principal obligor . . . are the underlying
obligation" – here, the order and judgment) (1996, West 2012).

Defendants warn that adding the pension plan as an obligor "could cause the plan to violate ERISA and the [IRS] Code." Defs. reply br. (doc. no. 73 at 6). The reason: "If the Court requires the Pension Plan to be listed as an obligor . . . generally for all potential . . . liabilities, then the Pension Plan will be required to oblige itself to payment of liabilities for benefits not only payable to Plaintiff Zebrowski, but also for Plaintiffs Bialy and Woodruff," in violation of the terms of the pension plan and the statutory provisions. Id. at 6-7 ("the Pension Plan cannot secure the payment of benefits that are not payable under that plan"). Defendants "cannot believe that the result sought . . . is really a direct violation of law and creation of excise tax obligations for the Pension Plan under Code Section 4975(a)." Id. at 7. This, too, is a specious position, lacking merit.

No provision of ERISA or the Internal Revenue Code would impose or create liability for an ERISA judgment against an entity not otherwise liable. See, e.g., Peacock, 516 U.S. at 352-53 (refusing to extend liability for payment of an ERISA judgment from the judgment creditor to a third party). The pension plan as an obligor on the surety agreement would be liable only for a judgment entered against it. Defendants assert that "in order to avoid potential legal violations," they "would be required to submit two or three separate supersedeas bonds," defs. reply br. (doc. no. 73 at 7). It is for them to determine the form and nature of the bond or bonds to submit in support of their application for a supersedeas.

As to the amount (see pls. br. (doc. no. 70 at 7-10)), the bond, according to defendants, is 125 percent of the liability represented by the judgment and is "more than adequate security." Defs. br. (doc. no. 69-1at 2); defs. reply br. (doc. no. 73 at 2, 8-10). Defendants acknowledge the bond was obtained to approximate the total of the award, plus prejudgment interest, attorney's fees, and court costs. See defs. reply br. (doc. no. 73 at 8). They also added, they aver, 25 percent to "cover such speculative payments and issues" in the award as increases in taxes. Id. at 9.

Increases for taxes is a significant aspect of the award.  In particular, the bond does not take into consideration that any payment due plaintiff Zebrowski might have to be paid by the surety or by the corporation – as defendants acknowledge – if the pension plan did not do so.  In that event, his tax burden would be substantially increased.  Although they represent that the pension plan currently has "over $435 million in assets," defendants do not identify the source of an eventual payment to Zebrowski.  Defs. reply br. (doc. no. 73 at 8).  Also, the judgment requires that the tax increase multipliers shall reflect the tax applicable during the year of actual payment.  At this time, projected taxes cannot be calculated with certainty; however some increased amounts will no doubt be due if plaintiffs prevail on appeal.  See pls. br. (doc. no. 70 at 7-10); id., 2013 Flanagan report, Ex. G (doc. no. 70-8); see also Oct. 10, 2012 Flanagan report at 9-11, Tables 6A & 6B, pls. mot., Ex. D (doc. no. 54-6).

Plaintiffs contend that a bond for $2,693,047.57 would be sufficient and support that figure with expert opinion.  Pls. br. (doc. no. 70 at 10); Flanagan reports, supra.  This is a more realistic estimate than the amount suggested by defendants.

A "supersedeas bond is a privilege extended the judgment debtor as a price of interdicting the validity of an order to pay money."  Poplar Grove Planting & Ref. Co., Inc. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979).  As in Kurtz, defendants in effect are asking that Rule 62(d)'s bond requirement be waived by approval of an inapposite bond.  528 F. Supp. at 1115 (refusing stay because defendant had not satisfied burden to post a full supersedeas bond, or demonstrated that it was impossible or impractical to do so, or proposed a plan that would provide adequate security).

An order accompanies this memorandum.

BY THE COURT:

/s/  Edmund V. Ludwig
Edmund V. Ludwig, J.

8